**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN: 249203)
ak@kazlg.com
David J. McGlothlin (SBN: 253265)
david@kazlg.com
Mona Amini (SBN: 296829)
mona@kazlg.com
Gustavo Ponce (SBN : 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff,*
Sara Taylor

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA TAYLOR, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>  vs.<br><br>LASERAWAY, LLC.<br><br>                Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA), 47 U.S.C. §§ 227, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

//
//
//
//
//
//

# INTRODUCTION

1. Plaintiff SARA TAYLOR ("Plaintiff"), individually and on behalf of all others similarly situated, brings this nationwide Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of LASERAWAY, LLC. ("Defendant"), in negligently and/or willfully contacting Plaintiff on Plaintiff's telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*, ("TCPA") and related regulations, including 47 C.F.R. § 64.1200(d), thereby invading Plaintiff's privacy.

2. In 1991, Congress passed the TCPA in response to complaints about certain telemarketing practices. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.

3. The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *See Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

4. Although a caller may obtain prior express consent from a consumer, prior express consent may nevertheless be revoked.

5. The right to revocation is consistent with the common law principle that consent is revocable and honors the purpose of the TPCA.

6. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

7. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

8. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

9. Unless otherwise stated, Plaintiff alleges that any violations by Defendant was knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

10. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law. 47 U.S.C. § 227(c).

12. Because Defendant conducts business within the State of California, personal jurisdiction is established.

13. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

    (a) Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

    (b) Defendant is located in this district;

    (b) Defendant does substantial business within this district;

    (c) Defendant is subject to personal jurisdiction in this judicial district because Defendant has availed itself of the laws and

1    markets within this district; and,

2    (d)   The harm to Plaintiff originated from within this judicial district.

## PARTIES

14. Plaintiff is, and at all times mentioned herein was a citizen of the State of Georgia, and a "person," as defined by 47 U.S.C. § 153(39).

15. Defendant is, and at all times mentioned herein was, a domestic limited liability company whose principal place of business and/or headquarters is located in Beverly Hills, California. Defendant is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

16. At all times relevant herein Defendant conducted business in the State of California and within this judicial district.

17. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## TCPA BACKGROUND

18. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

19. The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass

the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

20. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment, as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1] The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines.

21. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

22. Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

23. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

CLASS ACTION COMPLAINT

automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party …"

24.  47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

25.  As of October 16, 2013, unless the recipient has given *prior express written consent*,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.
- Prohibit solicitations to residences that use an artificial voice or a recording.
- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.
- Prohibit any call made using automated telephone equipment or an

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

- 6 -
CLASS ACTION COMPLAINT

artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.
- Prohibit unsolicited advertising faxes.
- Prohibit certain calls to members of the National Do-Not Call Registry.

26.  Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

27.  Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

28.  With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong

number violates the TCPA.

29. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

30. On or about October 14, 2024, Defendant began calling and sending telemarketing text messages to Plaintiff's cellular telephone number ending in 5873 (the "Cell Phone").

31. On October 17, 2024, Plaintiff responded to one such telemarketing text message with the word "Stop" in an attempt to opt out of any further telemarketing text message communications from Defendant.

32. In response to Plaintiff's "Stop" message, Defendant responded confirming that it had made a note in its system, and Plaintiff believed Defendant would stop sending Plaintiff further telemarketing text messages.

33. Despite Plaintiff's express request that Defendant "Stop" sending Plaintiff further telemarketing text messages, Defendant ignored Plaintiff's express opt out demand and continued to send Plaintiff additional telemarketing text messages.

34. Specifically, on December 8, 2024, at approximately 9:10 a.m., Defendant sent Plaintiff a telemarketing text message from 6784703524 to Plaintiff's Cell Phone.

35. Also, on December 22, 2024, at approximately 9:09 a.m., Defendant sent Plaintiff a telemarketing text message from 6784703524 to Plaintiff's Cell Phone.

36. Defendant's text messages were transmitted to Plaintiff's Cell Phone, and within the time frame relevant to this action.

37. These text messages originated from telephone numbers which upon information and belief are owned and operated by Defendant.

38. Defendant's text messages constitute telemarketing because they encouraged the Plaintiff to purchase goods or services from Defendant, *i.e.*, selling Plaintiff laser hair removal services.

39. The information contained in the text messages to Plaintiff's Cell Phone

CLASS ACTION COMPLAINT

advertised Defendant's services, which Defendant sent to promote its business.

40. Plaintiff is the subscriber and sole user of the Cell Phone and is financially responsible for phone service to the Cell Phone.

41. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

42. Furthermore, Defendant's text messages took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that voice message solicitations much like the text message solicitations sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cellphone performance).

43. Defendant's text messages also can slow cell phone performance by taking up space on the recipient phone's memory. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam voice messages much like text messages can slow cellphone performance by taking up phone memory space).

## STANDING

44. Plaintiff has standing under Article III of the Constitution for Plaintiff's claims because (i) Plaintiff properly alleges injuries in fact, (ii) which are traceable to Defendant's unlawful acts, and (iii) are likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).

### *Injury in Fact*

45. Plaintiff's injury must be sufficiently "concrete" and "particularized" to satisfy the requirements of Article III. *Id.* at 1547.

46. For an injury to be concrete, it must be "*de facto*," that is, it must actually exist. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017). Here, Plaintiff has suffered a concrete injury as Defendant sent multiple unsolicited text message solicitations to Plaintiff's cellular telephone after Plaintiff requested that Defendant stop. Those text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

47. An injury is "particularized," if it affects the plaintiff in a personal and individual way. *Spokeo*, 136 S. Ct. at 1548. Here, Plaintiff's injury is particularized as Defendant invaded Plaintiff's privacy by sending multiple unsolicited text message solicitations to her cellular telephone after Plaintiff requested that Defendant stop. Plaintiff became distracted, annoyed, and aggravated each time she received Defendant's unsolicited text messages. All of these injuries are particularized and specific to Plaintiff, and are the same injuries suffered by each member of the putative Class.

### *Traceable to Defendant*

48. Plaintiff must have suffered an injury in fact that is traceable to Defendant. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

49. Defendant's text messages are directly and explicitly linked to them. The text messages Defendant sent to Plaintiff indicate they were sent from Defendant. In addition, each text message references laser hair removal, or consultations which is Defendant's main line of business. Defendant's text messages are the sole source of Plaintiff's and the Class Members' injuries.

### *Redressable by Judicial Order*

50. Plaintiff must have suffered an injury in fact that is redressable by judicial order. *Id.*

51. Plaintiff's Prayer for Relief includes a request for damages for the text messages Defendant sent, as authorized by statute. *See* 47 U.S.C. § 227(b)(3). These statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and the Class Members.

**CLASS ACTION ALLEGATIONS**

52. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

53. Plaintiff brings this case on behalf of Classes defined as follows:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number after a request that Defendant cease such text messages.

54. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

55. Upon information and belief, Defendant has placed unsolicited telemarketing calls to cellular telephone numbers belonging to thousands of consumers throughout the United States who have requested that Defendant stop or indicated that they do not wish to receive further calls or text messages. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

56. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

57. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

　　(a)　Whether Defendant violated 47 U.S.C § 227(c)(2);

　　(b)　Whether Defendant violated 47 C.F.R. § 64.1200(d);

　　(c)　Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

　　(d)　Whether Defendant's conduct was knowing and willful;

(e) Whether Defendant adhered to requests by Plaintiff Class members to stop sending text messages to their telephone numbers;

(f) Whether Defendant keeps records of text recipients who revoked consent to receive text messages;

(g) Whether Defendant has any written policies for maintaining an internal do not call list;

(h) Whether Defendant is liable for damages, and the amount of such damages; and

(i) Whether Defendant should be enjoined from such conduct in the future.

58. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

59. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

60. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

61. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is

remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

62. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE TCPA 47 U.S.C. §§ 227(c)(2)

*(On Behalf of Plaintiff and the Internal Do Not Call Class)*

63. Plaintiff repeats and realleges the paragraphs 1 through 37 of this Complaint and incorporates them by reference herein.

64. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

65. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and each member of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5). Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

"(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

47 C.F.R. § 64.1200(d)(3), (6)

66. Under 47 C.F.R. § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wires telephone numbers.

"(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

47 C.F.R. § 64.1200(e)

67. Plaintiff and Class members made requests to Defendant not to receive calls from Defendant.

68. Defendant failed to honor Plaintiff and Class members' requests.

69. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

70. Because Plaintiff and members received more than one text message in a 12- month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

71. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $500.00 in statutory damages, for each

and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

72.  As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

73.  Plaintiff and class members also suffered damages in the form of invasion of privacy.

74.  Plaintiff and class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

- An order certifying this action to be as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and counsel as Class Counsel;
- An award of actual and statutory damages;
- An order declaring that Defendant's actions as set out above, violate the TCPA;
- An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Classes;
- Such further and other relief as the court deems necessary.

## DEMAND FOR JURY TRIAL

75.  Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 11, 2025                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:   */s/ Abbas Kazerounian*
      ABBAS KAZEROUNIAN, ESQ.
      DAVID J. MCGLOTHLIN, ESQ.
      MONA AMINI, ESQ.
      GUSTAVO PONCE, ESQ.
      *Attorneys for Plaintiff*